IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KUKUI GARDENS ASSOCIATION; FAITH ACTION FOR COMMUNITY EQUITY, | ) ) ) ) | CIVIL NO. 06-00534 SOM/LEK |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART KUKUI GARDENS CORPORATION'S MOTION TO DISMISS AND CARMEL PARTNER'S JOINDER THEREIN |
| ALPHONSO JACKSON, in his capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; KUKUI GARDENS CORPORATION; CARMEL PARTNERS, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER GRANTING IN PART AND DENYING IN PART
KUKUI GARDENS CORPORATION'S
<u>MOTION TO DISMISS AND CARMEL PARTNER'S JOINDER THEREIN</u>

I.      <u>INTRODUCTION.</u>

        Two organizations filed this action to stop the sale of

Kukui Gardens, an affordable housing project, to Carmel Partners,

a for-profit company.  The organizations sued Alphonso Jackson,

in his capacity as Secretary of the United States Department of

Housing and Urban Development ("HUD"), claiming that HUD has

committed various violations of the National Housing Act and the

Administrative Procedures Act in connection with the proposed

sale.  Because the organizations are attempting to stop the sale

of Kukui Gardens from Kukui Gardens Corporation ("KGC") to Carmel, those entities have been joined in this action.[1]

KGC has moved to dismiss the Complaint filed by one of the two plaintiffs, Faith Action for Community Equity ("FACE"), arguing that FACE lacks standing.  Carmel has joined in the motion.  Although this is a close call, the court concludes that FACE has sufficiently alleged a direct "injury in fact" for purposes of surviving the present facial challenge to its standing.  However, FACE lacks standing to pursue this matter in a representational capacity, as it identifies no member with standing to sue on its own behalf.  Accordingly, to the extent FACE brings this action on its own behalf, the motion to dismiss is denied.  To the extent FACE brings this action on behalf of its member, the motion to dismiss is granted.

KGC has also moved to dismiss the sixth count of the Complaint, arguing that there is no private right of action and that that count is not ripe.  Because the harm alleged in the Complaint has not yet occurred and may never occur, the court

---

[1]The parties are reminded that, in all future filings, they are required to submit two courtesy copies of anything filed electronically to this court pursuant to Rule 2.5 of the Amended General Order Adopting Electronic Case Filing Procedures.  The parties are further directed to refrain from incorporating by reference arguments made and exhibits submitted in connection with other motions and/or pleadings.  All arguments and exhibits shall be contained in the papers filed with respect to any particular motion.  The parties are further reminded to comply with Local Rule 10.2, which sets forth the minimum font-size requirements for both text and footnotes.

dismisses Count Six on ripeness grounds.  The court therefore does not reach KGC's argument that there is no private right of action with respect to the claim asserted in Count Six. Plaintiffs are given leave to file an amended complaint that alleges facts demonstrating that Count Six is ripe for adjudication.

II.      LEGAL STANDARD FOR A CHALLENGE TO A PLAINTIFF'S STANDING.

A plaintiff who seeks to invoke the jurisdiction of the federal courts must satisfy the threshold standing requirement imposed by Article III of the Constitution that an actual case or controversy exist.  City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983).  A plaintiff's standing must be apparent from the face of the complaint.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981) ("[T]he facts demonstrating standing must be clearly alleged in the complaint . . . . We cannot construe the complaint so liberally as to extend our jurisdiction beyond its constitutional limits."); accord Imagineering, Inc. v. Kiewit Pac. Co, 976 F.2d 1303, 1308 (9th Cir. 1992) ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."); Marks Food Corp. v. Barbara Ann Baking Co., 274 F.2d 934, 936 n.1 (9th Cir. 1960) ("Jurisdiction depends upon facts pleaded, not facts proved."). Accordingly, FACE's "standing is evaluated as of the date the complaint was filed."  Sacks v. Office of Foreign Assets Control,

466 F.3d 764, 774 (9th Cir. 2006).  An organization like FACE can have two types of standing--organizational first-party standing and representative standing.  See, e.g., Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982) (recognizing that an organization may bring suit on its own behalf and as a representative of its members).

Plaintiffs have the burden of proving that jurisdiction does in fact exist.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Standing pertains to this court's subject matter jurisdiction.  This court therefore analyzes FACE's standing to assert its claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

Under Rule 12(b)(1), this court may dismiss a complaint when its allegations are insufficient to confer subject matter jurisdiction.  Alternatively, this court may dismiss a complaint under Rule 12(b)(1) when disputed facts that would give rise to this court's subject matter jurisdiction are insufficient.  See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  When, as here, a defendant challenges the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of

4

<u>Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).  In such a facial attack on jurisdiction, the court limits its analysis to the allegations of and the documents attached to the complaint.  <u>See</u> <u>Samco Global Arms, Inc. v. Arita</u>, 395 F.3d 1212, 1214 n.4 (11th Cir. 2005) ("We use the same standard as the district court in analyzing a facial attack on jurisdiction, and therefore accept the well-pleaded allegations of the complaint as true and limit our inquiry to the complaint and the documents attached thereto."); <u>Gould Elecs. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000) ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.").

KGC moves to dismiss Count Six on the grounds of both ripeness and lack of a private cause of action.  As ripeness of a claim also goes to this court's jurisdiction, KGC's ripeness argument is also analyzed under the Rule 12(b)(1) framework.  <u>See</u> <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989) (whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of Article III of the federal Constitution).

III.     <u>BACKGROUND FACTS.</u>

This section summarizes the facts that Plaintiffs allege in the Complaint.  This alleged factual background is set

forth here only to give this motion context and does not constitute any finding of fact by this court.  Although the parties have referred to other evidence contained in the record, on the present facial challenge to FACE's standing and the issue of whether Count Six is ripe, this court examines only the allegations of the Complaint and the documents attached to the Complaint.

Kukui Gardens is an 857-unit, low-income housing project developed using a mortgage that HUD insured.  Complaint (Oct. 2, 2006) ¶ 1.  KGC is the developer and current owner of Kukui Gardens.  Id. ¶ 5.  KGC was formed by the trustees of The Clarence T.C. Ching Foundation for the purpose of securing funding and overseeing the development of Kukui Gardens. Id. ¶ 16.  According to the KGC incorporation documents, if Kukui Gardens is sold, the revenue from the sale will go to the Ching Foundation Trust.  Id.  On or about January 11, 2006, KGC announced that it intended to sell Kukui Gardens "to ensure the continued viability of the Clarence T.C. Ching Foundation." Id. ¶ 25.  Carmel Partners has subsequently entered into an agreement with KGC for the purchase of Kukui Gardens.  Id. ¶ 6.

Plaintiff Kukui Gardens Association ("KGA") is an association of Kukui Gardens residents.  FACE consists mainly of religious organizations but also includes a local union and KGA. Id. ¶ 2-3.

To finance the Kukui Gardens project, KGC obtained a
42-year, $16,101,100.00 mortgage from the Ford Foundation.
Id. ¶ 17.  HUD insured the mortgage on condition that KGC enter
into a "Regulatory Agreement for Non Profit and Public Mortgagors
Under § 221(d)(3) of the National Housing Act, as Amended."  Id.
This agreement provides that KGC may not convey, transfer, or
encumber any of the mortgaged property without the prior written
approval of HUD.  Id. ¶ 18.  The mortgage note similarly provides
that prepayment of the mortgage is prohibited without HUD's prior
written approval.  Id. ¶ 20.  According to Plaintiffs, section
250 of the National Housing Act requires HUD to approve such a
prepayment only when the project no longer fulfills a need for
rental housing.  Id. ¶ 21.

On August 8, 2006, HUD issued Notice H-2006-11
regarding "Prepayments Subject to Section 250(a) of the National
Housing Act" ("Notice").  Id. ¶ 23.  Under this Notice,
prepayment will be permitted "'if the owner of a subsidized
project can show that the regulatory agreement executed by the
owner . . . is no longer needed by assuring that the building
will continue to provide low-income housing in the absence of any
regulatory agreement.'"  Id. (quoting Notice at 4).

Plaintiffs allege that, when a nonprofit owner seeks to
transfer a property such as Kukui Gardens, HUD requires the
property to first be offered to another nonprofit before being

7

offered to for-profit entities such as Carmel.  Id. ¶ 28.
Plaintiffs also claim that any profit from the sale of Kukui
Gardens must be used only to promote the expansion of the supply
of low- and moderate-income housing.  Id. ¶ 29.

On or about July 24, 2006, KGC sent notices to Kukui
Gardens' tenants, informing them of KGC's intent to prepay the
mortgage on or after December 22, 2006.  Id. ¶ 31.  According to
Plaintiffs, section 250 of the National Housing Act requires such
notices to contain more information than provided by KGC.
Id. ¶ 32.

Plaintiffs allege that HUD "will approve the prepayment
of the mortgage on Kukui Gardens."  Id. ¶ 35.  Although
Plaintiffs predict that HUD will approve the prepayment of the
mortgage, the documents attached to the Complaint do not indicate
that such approval is a foregone conclusion.  Attached as
Exhibit F to the Complaint is a September 26, 2006, letter from
HUD to Plaintiffs' Counsel indicating that HUD has not even been
asked to approve the prepayment.  At the hearing, the parties
indicated that HUD has subsequently been asked to approve the
prepayment.  However, as this is a facial challenge to this
court's jurisdiction, this court makes its determinations as to
jurisdictional issues based on the allegations in the Complaint
and the documents attached thereto.  According to the Complaint,
HUD has the discretion to approve or disallow a prepayment, as

8

any request for prepayment must demonstrate that the regulatory agreement is no longer needed by "assuring" that Kukui Gardens will continue to provide low-income housing.  See Complaint ¶ 23 (prepayment will be permitted "'if the owner of a subsidized project can show that the regulatory agreement executed by the owner . . . is no longer needed by assuring that the building will continue to provide low-income housing in the absence of any regulatory agreement'" (quoting the Notice)).

        Plaintiffs' Complaint contains six counts.  In the first count, Plaintiffs assert that HUD has failed to comply with section 250 of the National Housing Act by adopting the Notice. The second count asserts a "threatened" violation of section 250 of the National Housing Act based on the possibility that HUD will approve the prepayment of the mortgage pursuant to the Notice.  The third count asserts a violation of the Administrative Procedures Act based on HUD's adoption of a policy that is allegedly contrary to section 250 of the National Housing Act.  The fourth count asserts a violation of the Administrative Procedures Act based on HUD's adoption of a policy allegedly in violation of rulemaking requirements.  The fifth count asserts that HUD violated fair housing laws by failing to affirmatively further fair housing.  The sixth count asserts a "threatened" violation of fair housing laws based on the possibility that HUD

will approve the prepayment of the Kukui Gardens' mortgage
pursuant to its Notice in violation of 42 U.S.C. § 3604.

IV.       FACE ALLEGES AN INJURY SUFFICIENT TO GIVE IT STANDING
            TO ASSERT ITS OWN CLAIMS, BUT FACE LACKS STANDING TO
            ASSERT CLAIMS ON BEHALF OF KGA.

KGC challenges FACE's standing to sue on its own behalf
and as a representative of its member, KGA.  The court denies
KGC's motion to the extent it makes a facial challenge to FACE's
standing to assert claims on its own behalf.  However, the court
grants the motion to the extent FACE is asserting
representational standing on KGA's behalf.

FACE initially argues, on page 6 of its opposition,
that, because KGC has not challenged KGA's standing, "courts will
not question the standing of the remaining plaintiffs in an
action."  In making this argument, FACE relies on <u>Babbitt v.
United Farm Workers National Union</u>, 442 U.S. 289, 299 n.11
(1979).  The court is not persuaded.  Such an argument, taken to
its logical conclusion, would allow someone who plainly had no
injury to sue for money damages just because another plaintiff
was injured, provided no one challenged standing.  That is not
what <u>Babbitt</u> stands for.  In <u>Babbitt</u>, the Supreme Court merely
determined that, on appeal, as opposed to at the trial level, it
was not necessary to determine whether each plaintiff had
standing, as the court was able to determine the issues on appeal
so long as a single plaintiff had standing.  <u>Id.</u>

10

KGC belatedly argues that Plaintiffs' Administrative Procedures Act claims should be dismissed based on a lack of standing because there has been no final agency action.  Because this argument was raised for the first time in KGC's Reply, this court disregards it.  <u>See</u> Local Rule 7.4 ("Any arguments raised for the first time in the reply shall be disregarded.").  This ruling does not prohibit a possible subsequent motion on the subject.

     A.   <u>Organizational First-Party Standing.</u>

In examining whether an organization has standing to sue on its own behalf, courts conduct the same inquiry as in the case of an individual.  <u>See</u> <u>Havens</u>, 455 U.S. at 379. Accordingly, to have standing to maintain its claims, FACE must demonstrate: 1) an injury in fact--an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical; 2) a causal relationship between the injury and the challenged conduct--an injury that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and 3) a likelihood, not mere speculation, that the injury will be redressed by a favorable decision.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

Each element of the standing analysis "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  Lujan, 504 U.S. at 561.  On a facial motion to dismiss such as this, general factual allegations may suffice, as courts presume that the general factual allegations "embrace those specific facts that are necessary to support the claim."  Id.  Of course, FACE's burden will differ on any subsequent motion on the merits and at trial.  Id.

FACE alleges that it has been harmed by HUD's actions in two ways.  It alleges that one of its "primary purposes is to preserve and increase the availability of affordable rentals in the State of Hawaii and to house the homeless."  Complaint (Oct. 2, 2006) ¶ 3.  FACE alleges that it has personally been harmed by HUD's actions because it "has had to divert a significant portion of its resources towards preventing the sale and prepayment of Kukui Gardens."  Id.  FACE also says it has personally suffered interference "with FACE's mission and efforts to promote more affordable housing by reducing the available supply from what it otherwise would be."  Id. ¶ 39.

In Lujan, environmental groups filed an action challenging a rule that limited section 7(a)(2) of the Endangered Species Act of 1973, 16 U.S.C. § 1536(a)(2), to actions within

12

the United States or on the high seas. Id. at 557-59. The
Supreme Court ruled that those environmental groups lacked
standing. Id. at 579. The Court noted that the environmental
groups had a "cognizable interest" in using or observing animal
species, but stated that an "injury in fact" requires more than a
cognizable interest. It requires a plaintiff "to be among the
injured." Id. at 562-63. Like the environmental groups in
Lujan, FACE has a "cognizable interest." The court must
therefore determine whether, based solely on the allegations
contained in the Complaint, FACE is among those injured by HUD's
actions.

Citing Havens Realty Corp. v. Coleman, 455 U.S. 363,
379 (1982), FACE asserts that "a diversion of resources is [a]
sufficient injury" for standing purposes because the Supreme
Court has determined that "the organizational plaintiff [in that
case] had standing based on . . . allegations . . . that
defendant[']s actions had frustrated its activities and required
a drain on its resources." Opposition at 7-8. Havens involved
an organization that sent its employees to determine whether
renters were practicing "racial steering." The organization sent
an African-American and a white "tester" to a property to
determine whether a renter would tell the African-American
"tester" that there were no apartments for rent but tell the
white "tester" that there were apartments for rent. Id. at 368.

13

When the organization filed suit, a facial challenge to its standing was raised.  The organization had alleged in the complaint that it was a nonprofit organization "whose purpose was 'to make equal opportunity in housing a reality in the Richmond Metropolitan Area.'"  _Id._ at 368 (quoting paragraph 8 of the complaint in _Havens_).  The organization further alleged that its activities included attempting to assist equal access to housing through counseling and the investigation and referral of complaints concerning housing discrimination.  _Id._ (citing paragraphs 8a and 8b of the _Havens_ complaint).  The Supreme Court found a "concrete and demonstrable injury to the organization's activities--with the consequent drain on the organization's resources," _id._ at 379, as the organization had alleged that the renters' racially discriminatory steering practices frustrated the organization's efforts to promote equal access to housing through counseling and other referral services, and caused the organization "to devote significant resources to identify and counteract the defendant's racially discriminatory steering practices." _Id._ (citing paragraph 16 of the _Havens_ complaint).

Some courts have commented that the decision in _Havens_ reflects the doctrine of necessity in the fair housing discrimination context.  Courts have opined that the decision may have been a recognition that testing may be the only effective method of enforcing the fair housing laws.  _See_, _e.g._, _Indep._

14

Living Res. v. Or. Arena Corp., 982 F. Supp. 698, 761 n.86 (D. Or. 1997).  However, in El Rescate Legal Services, Inc. v. Executive Office of Immigration Review, 959 F.2d 742 (9th Cir. 1991), the Ninth Circuit applied Havens to a case outside the Fair Housing Act discrimination context.  In El Rescate, organizations were established to assist Central American refugee clients who, for the most part, did not understand English, and who were seeking asylum and/or trying to avoid deportation. Although the allegations in the complaint in El Rescate were not clear from the Ninth Circuit decision, the organizations were challenging a government policy of failing to provide full translations of deportation and exclusion hearings, claiming that their goals were being frustrated by the policy and that the policy required the organizations to expend resources in representing clients that could be spent otherwise.  Fairly construed, the organizations' complaint alleged that the government policy of not providing translations interfered with their ability to assist refugee clients and caused economic harm to the organizations.  The Ninth Circuit held these allegations sufficient to establish the organizations' standing.  Id. at 748.

In Fair Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002), the Ninth Circuit similarly found organizational first-party standing.  In Combs, an organization alleged that one of its activities was providing outreach and education in the

15

community regarding fair housing.  The organization sued an
apartment complex owner for illegal housing discrimination based
on race, claiming that the organization had suffered an injury to
its ability to carry out its purpose and had economic losses in
terms of staff pay, funds expended, and the inability to
undertake other efforts.  Id. (citing paragraph 5 of the
Complaint in Combs).  The Ninth Circuit held these allegations
sufficient for standing purposes.  Id.

        FACE alleges that the proposed sale is interfering
with its mission and efforts to promote affordable housing and
that it has caused FACE to divert its resources.  Under Havens,
El Rescate, and Combs, these general allegations are sufficient
to allow FACE to survive a facial challenge to its standing at
this stage.  See Lujan, 504 U.S. at 561.  Although KGC argues
that the complaints in Havens, El Rescate, and Combs contained
much more detail than FACE's Complaint, the court, having
reviewed the allegations in those complaints, finds them similar
to FACE's allegations.  Accordingly, the court denies KGC's
motion to dismiss FACE's Complaint to the extent it asserts
organizational first-party standing.

        In holding that FACE has standing to proceed with its
own claims at this stage of the case, the court is not ruling
that FACE actually has standing, as Lujan recognized that FACE's
burden with respect to standing will differ on any subsequent

16

motion on the merits and at trial.  Id.  It may well be that FACE will be unable to show any injury caused by HUD's actions, as opposed to its own.  The court is therefore not precluding a subsequent motion based on a factual challenge to FACE's standing or an argument at trial that FACE lacks standing.  If any such motion is filed, the parties may discuss whether FACE's injury is "fairly traceable" to HUD's actions.  See, e.g., Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129, 133 (D.C. Cir. 2006) ("an organization is not injured by expending resources to challenge the regulation itself; we do not recognize such self-inflicted harm"); Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales, 468 F.3d 826, 831 (D.C. Cir. 2006) ("[T]he association's asserted injury appears to be largely of its own making.  We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing.  Such harm does not amount to an 'injury' cognizable under Article III.  Furthermore, even if self-inflicted harm qualified as an injury it would not be fairly traceable to the defendant's challenged conduct." (citations omitted)); Ass'n of Community Organizations for Reform Now v. Fowler, 178 F.3d 350, 358 (5th Cir. 1999) ("An organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries, i.e., those that are not fairly traceable to the actions of the defendant." (quotations omitted)); John & Vincent Arduini Inc. v.

17

NYNEX, 129 F. Supp. 2d 162, 168 (N.D.N.Y. 2001) ("To the extent
that an injury is self-inflicted or due to the plaintiff's own
fault, the causal chain is broken and standing will not be
established.").

      B.   <u>Representational Standing.</u>

      KGC also argues that FACE lacks standing to bring
claims in a representational capacity.  The Supreme Court has
stated that

> an association has standing to bring suit on
> behalf of its members when: (a) its members
> would otherwise have standing to sue in their
> own right; (b) the interests it seeks to
> protect are germane to the organization's
> purpose; and (c) neither the claim asserted
> nor the relief requested requires the
> participation of individual members in the
> lawsuit.

<u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 343
(1977); <u>Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona
Mun. Corp.</u>, 2006 WL 3755201, *4 (9th Cir. Dec. 22 2006).  FACE
claims that it satisfies the first requirement because KGA is one
of its members.  However, to rely on KGA's membership for
standing purposes, FACE must also show that KGA has standing in
its own right.  <u>Id.</u>  Although the court asked Plaintiffs to come
to the hearing prepared to identify whether KGA is asserting
claims on its own behalf, FACE provided nothing to the court on
that subject.  The Complaint indicates that KGA is asserting
claims in a representational capacity.  That is, KGA is relying

for its own standing on the standing of the individuals who are its members. Accordingly, it cannot be said that KGA has standing to sue in its own right.

FACE conceded at the hearing that it had no authority for the proposition that an organization could sue as a representative of a representative. In other words, FACE had no authority indicating that FACE could sue as a representative of KGA, which was itself a representative of individual residents of Kukui Gardens. FACE lacks standing to assert claims in a representational capacity.

V.      Count Six.

Count Six of the Complaint alleges that prepayment of the Kukui Gardens' mortgage threatens the loss of 857 affordable units and will have a disproportional effect on nonwhite renters. Plaintiffs say that HUD's approval of the prepayment of the mortgage under the Notice will violate the antidiscrimination provisions of 42 U.S.C. § 3604. Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 3613.

KGC argues that Count Six should be dismissed because there is no private right of action. Alternatively, KGC argues that Count Six is not ripe for judicial review, as it merely alleges a "threatened" violation of the Fair Housing Laws. Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause

19

of Article III of the federal Constitution, see St. Clair, 880
F.2d at 201, and is a question of law that must be determined by
the court.  See Herrington v. County of Sonoma, 857 F.2d 567, 568
(9ᵗʰ Cir. 1988).  Accordingly, the court examines KGC's ripeness
claim before reaching the merits of whether there is a private
right of action to bring Count Six.

          Ripeness is determined by a two-pronged analysis.  A
plaintiff must show both that the issues are appropriate for
judicial decision and that the plaintiff will suffer hardship if
judicial consideration is withheld.  United States v. Lazarenko,
469 F.3d 815, 825 (9ᵗʰ Cir. 2006) ("We determine if a case is
ripe for review by evaluating whether (1) the issues are fit for
judicial decision, and (2) the parties will suffer hardship if we
withhold decision.").  The Ninth Circuit has cautioned that "a
federal court normally ought not resolve issues involving
contingent future events that may not occur as anticipated, or
indeed may not occur at all."  Clinton v. Acequia, Inc., 94 F.3d
568, 572 (9ᵗʰ Cir 1996) (citations and quotations omitted).

          Considering only the allegations in the Complaint and
the documents attached thereto, the court finds no allegation
that HUD has approved the prepayment of the mortgage or the sale
of Kukui Gardens from KGC to Carmel.  At most, Plaintiffs allege
in paragraph 35 of the Complaint that HUD will approve the
prepayment.  However, Plaintiffs do not explain the basis for

20

that allegation.  A letter dated September 26, 2006, attached to the Complaint as Exhibit F, indicates that, as of that date, HUD had not even received a formal request from KGC to prepay the mortgage.  Indeed, the Complaint alleges that HUD exercises discretion in approving such a prepayment.  Count Six of the Complaint is therefore not ripe, as there can be no "disparate impact" on nonwhite renters under the facts asserted in the Complaint and the attachments to the Complaint.

Plaintiffs argue that 42 U.S.C. § 3613(c)(1) allows cases similar to this one to proceed even if the harm has not yet occurred.  Plaintiffs rely on language contained in that section that allows an "aggrieved person" to be awarded damages and obtain an injunction "if the court finds that a discriminatory housing practice has occurred or is about to occur." Id. (emphasis added).  However, nothing in the Complaint indicates that a discriminatory housing practice "is about to occur."  Thus, Plaintiffs cannot, based on the Complaint, be "aggrieved persons."  To the contrary, the documents attached to the Complaint indicate that HUD has not even been formally asked to approve the prepayment of the mortgage.[2]

_____

[2]At the hearing, the parties indicated that, subsequent to the filing of the Complaint, HUD has been asked to approve the prepayment of the Kukui Gardens' mortgage.  Plaintiffs also stated at the hearing that, based on the language of the Notice, HUD lacks discretion to refrain from approving that prepayment. These assertions, however, go beyond the Complaint.  Because KGC's motion facially challenges this court's jurisdiction to

As presently pled, Count Six does not address imminent
harm.  No one, for example, is about to rent his or her last unit
to a white person after telling a nonwhite person that the unit
was not for rent.  Plaintiffs fail to allege that they will
suffer hardship if judicial consideration is withheld.
Accordingly, Count Six is not ripe and is dismissed.

VI.      CONCLUSION.

For the reasons set forth above, KGC's motion to
dismiss and Carmel's joinder therein is granted in part and
denied in part.  To the extent FACE asserts its claims on its own
behalf, the motion is denied, as FACE's general allegations of
injury are sufficient to survive this facial challenge to this
court's jurisdiction.  To the extent FACE asserts claims on
behalf of KGA, the motion is granted, as FACE lacks standing to
assert such claims.  Finally, Count Six is dismissed on ripeness
grounds.

FACE is granted leave to amend its Complaint so long as
any such amendment would not be futile.  See Snell v. Cleveland,
Inc., 316 F.3d 822, 828 n.6 (9th Cir. 2002) ("Dismissal without
leave to amend is improper unless it is clear . . . that the
complaint could not be saved by amendment.").  For example, FACE
may amend its Complaint to make allegations indicating that Count

---

adjudicate Count Six, this court is limited to examining whether
the Complaint alleges a ripe claim.

22

Six is ripe.  FACE is free to make other amendments, such as
amendments going to its alleged injury.  Any amended complaint
must be filed no later than January 19, 2007.

        IT IS SO ORDERED.

        Dated: Honolulu, Hawaii, January 11, 2007.



                                /s/ Susan Oki Mollway
                                _____
                                Susan Oki Mollway
                                United States District Judge

Kukui Gardens Association, et al. v. Alphonso Jackson, et al., Civil No. 06-
534 SOM/LEK; ORDER GRANTING IN PART AND DENYING IN PART KUKUI GARDENS
CORPORATION'S MOTION TO DISMISS AND CARMEL PARTNER'S JOINDER THEREIN